LANDRY, Judge.
Plaintiff herein, Oliver P. Bonner, a labor foreman on a sewer installation project undertaken by his employer, Hebert Brothers, Engineers, instituted this action against defendant, General Accident Fire and Life Assurance Corporation, Ltd. (insurer of Hebert Brothers, Engineers), to recover workmen’s compensation benefits for alleged total permanent disability purportedly resulting from a back injury sustained by plaintiff in the course of his employment by his aforesaid employer on June 18, 1956. From the judgment of the trial court rejecting plaintiff’s claim and dismissing his suit, plaintiff has taken this appeal.
The occurrence of the accident within the scope and during the course of plaintiff’s employment, as well as the fact that some injury resulted therefrom, is readily conceded by defendant insurer. On this appeal an issue of fact only is presented for decision, namely, the extent and duration of plaintiff’s disability.
Plaintiff contends the accident rendered him totally and permanently disabled to perform his former duties whereas defendant maintains that plaintiff’s disability was only temporary and plaintiff is entitled to no further compensation benefits considering he has recovered from his injuries and was paid full salary during his incapacity.
According to the record, plaintiff (who was approximately 52 years of age at the time of the accident) was engaged by his employer as labor foreman on a sewer project in Thibodaux, Louisiana. In such capacity plaintiff’s principal duties con *414 sisted of supervising the work of a labor crew ranging in size from 12 to 20 men depending upon the progress of the contract on which he was engaged. While plaintiff’s primary duties were supervisory in nature, he was on occasion required to assist in the work of laying sewer pipe in trenches or ditches varying in depth from two to twelve feet. In the course of such work it was not unusual for plaintiff to bend, stoop, lift heavy objects and climb in and out of trenches to assist in any phase of the project not only to keep th job operating smoothly but also to set the example for his subordinates. It is conceded, however, that such strenuous activities did not comprise plaintiff’s chief duties which, as previously shown, were supervisory in character.
On June 18, 1956, plaintiff sustained a “low back injury” when he accidentally slipped and fell striking his back on a piece of lumber lying beside a trench in which a sewer line was being laid.
Simply stated, plaintiff’s position is that since his accident and injury he is unable to work without pain and is consequently totally and permanently disabled within the meaning and intendment of the term “total and permanent disability” as employed in the workmen’s compensation law of this state. Conversely, defendant maintains plaintiff’s disability was only temporary and did not continue beyond the period during which plaintiff received full wages from his employer following the accident.
Immediately following the accident in question, plaintiff was taken to Dr. Ray, a general practitioner with offices in Thib-odaux, Louisiana. Dr. Ray hospitalized plaintiff for a period of one week during which time he conducted radiological and other examinations from which he diagnosed plaintiff’s condition as “lumbo-sacral strain with contusion of the left kidney”. In treatment of plaintiff’s injuries Dr. Ray prescribed diathermy and the use of a supportive surgical belt. On June 25, 1956, plaintiff was permitted to leave the hospital but was not allowed to return to work for some two or three weeks thereafter during which time he made daily visits to Dr. Ray for further observation and treatment. Approximately three weeks following his discharge from the hospital plaintiff was contacted by his employer and urged to return to work on a “light duty basis” as the employer was in dire need of the services of an experienced foreman on the job then in progress. Plaintiff resumed his former position for approximately two months at the end of which time his services were terminated in a “layoff” which occurred sometime during September, 1956, and which involved plaintiff’s entire crew. From the date of his injury to the time of his discharge plaintiff received full wages in the sum of $125.00 per week and an additional expense allowance of $25.00 per week. Following his discharge by the insured of defendant herein, plaintiff obtained employment as foreman with firms situated in Austin, Texas, Alexandria, Louisiana, and Baton Rouge, Louisiana, (in which latter city plaintiff was employed for approximately three months by the concern known as Pearce and LeBlanc). Although plaintiff is not certain as to the exact time of his employment by Pearce and LeBlanc and honestly believes said employment to have commenced in 1957, the record affirmatively shows (as indicated by certain movie films taken of plaintiff on the job while in the employ of Pearce and LeBlanc and hereinafter discussed in detail) said employment commenced at least as early as November, 1956.
Despite plaintiff’s complaint of inability to work without appreciable or substantial pain, the record nevertheless establishes that plaintiff has been engaged in his former work since the accident in question and further that, since termination of his treatment by Dr. Ray on approximately August 1, 1956, plaintiff has sought additional treatment on only one occasion, namely, October 25, 1957, on which *415 date plaintiff consulted Dr. Alfred J. Kelly of Austin, Texas. Neither Dr. Ray nor Dr. Kelly .testified as a witness herein. Plaintiff, however, introduced in evidence a report of Dr. Ray dated September 8, 1956, showing that as of the date of the report Dr. Ray considered plaintiff able to do light work only.
In addition to Doctors Ray and Kelly, plaintiff was examined by numerous other medical authorities all of whom (excepting Ray and Kelly) examined plaintiff purely for diagnostic purposes and evaluation of the extent and duration of plaintiff’s injuries.
On August 3, 1957, at the request of his own counsel, plaintiff was examined by Dr. Frederick C. Lowry who found (as appears from his report dated August 15, 1957) plaintiff was suffering from a contusion of the lumbo-sacral muscle on the left side. Dr. Lowry, however, expressed no opinion regarding plaintiff’s ability to perform the duties of labor foreman.
Dr. L. J. Kern, Urologist, examined plaintiff October 24, 1956. By deposition taken October 6, 1958 (the present trial was held October 8, 1958) Dr. Kern expressed the opinion that any kidney injury plaintiff may have received in the accident of June 25, 1956 had healed and plaintiff’s complaints, if any, might be due to a back injury but not to residual damage to plaintiff’s genito-urinary tract.
An orthopedist, Dr. Charles B. Cracraft, examined plaintiff November 18, 1957 (some 17 months following plaintiff’s injury). His deposition taken October 3, 1958, shows that, predicated upon X-rays provided by previous medical examiners and the history and subjective symptoms narrated b3^ plaintiff, the witness concluded plaintiff received only a contusion and strain of his back. In substance, Dr. Cra-craft testified plaintiff’s injury did not render plaintiff totally and permanently disabled.
Dr. Duane Foreman, neurological surgeon, examined plaintiff on one occasion, namely, November 18, 1957. As appears from his deposition taken October 6, 1958; based on purely subjective symptoms related by plaintiff, he concluded plaintiff was suffering from a possible ruptured intervertebral disc. Dr. Foreman noted no abnormality in the affected area of plaintiff’s back and likewise found that plaintiff displayed no'objective symptoms or evidence of disability. In addition, Dr. Foreman acknowledged that without a myleogram his diagnosis of possible ruptured disc was highly questionable and further that the presence of a ruptured disc in the area was unlikely.
Twice during November, 1956, and on October 6, 1958, plaintiff was examined by Dr. Thomas Campanella, orthopedic surgeon, whose testimony on plaintiff’s behalf appears in the record in deposition form. Dr. Campanella found some muscle spasm and was of the opinion that plaintiff could logically expect to experience some pain upon the performance of arduous physical labor. His opinion in this regard appears to be predicated upon plaintiff’s age and a previously existing arthritic condition. On his last examination of plaintiff on' October 6, 1958, Dr. Campanella diagnosed plaintiff’s condition as chronic lumbo-sacral sprain. Although he felt that plaintiff was suffering from a 15% disability of the back he nevertheless expressed the opinion that if plaintiff had been engaged in his former work since the accident, he felt plaintiff could continue to do so even though such duties entailed a great deal of walking and other similar activities.
Dr. J. M. Edelman, neuro-surgeon, examined plaintiff October 6, 1958, and, testifying on behalf of defendant, in substance stated he found no objective symptoms of plaintiff’s alleged disability and no justification for plaintiff’s complaint of persistent and continued pain. He likewise found no basis for the conclusion plaintiff was no longer able to perform *416 all duties incident to his employment as foreman including whatever amount of bending, stooping, lifting and climbing was required of plaintiff.
In addition to his own testimony plaintiff introduced evidence of only one other lay witness, namely, Charles Smith, an engineer engaged by plaintiff’s employer in the capacity of plaintiff’s immediate superior. In summary, Smith characterized plaintiff as an honest, industrious and conscientious foreman who constantly endeavored to render satisfactory services. According to Smith, plaintiff was never quite the same following the accident, Smith having noted a marked change in plaintiff’s efficiency subsequent to plaintiff’s injury. The principal change observed by Smith was a loss of agility and facility of movement in that plaintiff’s actions appeared more slow and deliberate following the accident. Smith’s testimony is devoid of reference to any complaints of pain by plaintiff following plaintiff’s resumption of duties neither does his testimony indicate that plaintiff exhibited any signs or indications of pain while working. Smith’s testimony is simply to the effect that plaintiff appeared less efficient following the accident.
Plaintiff himself testified that since the accident he has been unable to work without substantial pain. He acknowledges that except for the one visit to Dr. Kelly in Austin, Texas during October, 1956, he has consulted no medical authority for treatment since his last visit to Dr. Ray on or about August 1, 1956. His failure in this regard is explained by his continuation of heat treatments initially prescribed by Dr. Ray and endorsed and approved by the several doctors whom he has meanwhile consulted for evaluation of his condition. He further testified that to relieve the pain he relies upon the mild analgesic anacin and diathermy treatments in the form of hot baths which latter therapeutic measure he is frequently compelled to resort to late at night and during early morning hours upon awakening in pain. Although he concedes his employment as foreman subsequent to his layoff by defendant’s insured, he related no instance wherein he either complained of pain to his employer or fellow workers or resigned such employment because of his inability to work due to pain.
As contended by learned counsel for plaintiff, it is settled jurisprudence in this state that an employee is considered totally and permanently disabled within the meaning of the term total and permanent disability as appearing in the workmen’s compensation law of this state when he cannot perform his usual and customary duties without experiencing appreciable or substantial pain and discomfort. Jones v. Employers Mutual Liability Ins. Co. of Wisconsin, La.App., 114 So.2d 602; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Stansbury v. National Auto. & Cas. Ins. Co., La.App., 52 So.2d 300; Thompson v. Bituminous Casualty Corporation, La.App., 104 So.2d 248.
On this appeal esteemed counsel for appellant bitterly attacks the judgment of the trial court on numerous grounds which may be summarized as follows: (1) Improper interpretation of the testimony of Doctors Campanella and Foreman; (2) Discarding plaintiff’s testimony as being unworthy of belief on the ground that plaintiff’s evidence was purely subjective in nature; (3) Failure to find as a fact that plaintiff cannot work except in substantial pain and discomfort, and (4) Concluding, contrary to the evidence of record, that plaintiff has failed to prove his claim by a fair preponderance of the evidence.
In support of the contention the trial court did not accord sufficient weight to the testimony of Doctors Campanella and Foreman, counsel for plaintiff argues the record shows the trial court did so mainly on the mistaken belief no objective symptoms were found by Dr. Campanella whereas the record shows he found muscle *417 spasm which is objective rather than subjective. While the testimony of Dr. Campanella does show he found muscle spasm which we readily concede to be an objective symptom, his testimony as a whole shows that, whereas on plaintiff’s first two examinations Dr. Campanella felt plaintiff might have cause for complaint, on the last examination he distinctly felt plaintiff could resume his former employment. As previously shown, despite Dr. Campanella’s evaluation of plaintiff’s condition at a 15'% disability of the back, he was of the opinion that if plaintiff had continued to perform his former duties since the accident he felt that plaintiff could continue to do so.
Plaintiff’s contention the trial court did not give sufficient weight to the testimony of Dr. Foreman, is, in our opinion, without corroboration in the record. The same is true of plaintiff’s argument that the trial court depreciated plaintiff’s testimony because of plaintiff’s refusal to submit to myleography as suggested by Dr. Foreman. As regards both these contentions, the reasons for judgment appearing herein clearly show the learned trial court carefully considered and weighed all of the evidence and concluded plaintiff had failed to prove his case by that preponderance of the evidence the law requires.
With the sole exception of Dr. Campanella’s reference to muscle spasm, no other medical expert detected objective symptoms corroborative of plaintiff’s complaints of pain. As previously shown, Dr. Edelman who examined plaintiff a day or two before trial was of the opinion plaintiff had fully recovered. Even if Dr. Campanella’s evidence was to the effect plaintiff claims it to be, it stands not only alone but also contradicted by the contemporaneous opinion of Dr. Edelman which is entitled to equal weight. In so finding, we do not mean, however, to convey the impression that questions of fact are necessarily to be decided by the numerical weight of witnesses (the contrary having been declared on numerous occasions by the courts of this state). We reiterate that each case must be decided in the light of all its own peculiar facts and circumstances.
In essence, therefore, for recovery herein plaintiff at best relies upon the testimony of one medical expert, namely, Dr. Campanella, which (assuming it to be as plaintiff contends) is contradicted by a clear preponderance of expert medical testimony of equal weight and credibility. When we view this important circumstance together with other salient aspects of the instant case such as plaintiff’s continued employment in the same line of work in which he was engaged when injured, his failure to seek or obtain treatment since leaving the employment in which he was injured and his failure to produce even one witness to corroborate his complaints of pain, we can but conclude as did our brother below that plaintiff has indeed failed to establish his cause by a preponderance of evidence.
In addition to the foregoing evidence our brother below had before him four reels of movie film taken on various days during November, 1956, showing plaintiff performing the duties of foreman while in the employ of the firm of Pearce and LeBlanc. The films (viewed by this court on appeal) show plaintiff in the act of performing the various normal and usual duties of a foreman including bending, stooping, lifting and climbing in and out of trenches with apparent ease and normal agility for a man plaintiff’s age. Conceding the pictures were taken with a telephoto lens and therefore do not show plaintiff’s facial features in such detail and clarity that expressions of pain or discomfort registered therein could be detected by observing the film, the pictures do show, however, that plaintiff’s movements were neither slow nor deliberate but compatible with those of the average individual of plaintiff’s age.
*418 The jurisprudence of this state recognizes the wisdom of the old Chinese proverb that “one picture is worth ten thousand words” and establishes the principle that pictures are admissible in evidence when they tend to clarify some material issue or assist the court in weighing the oral testimony of record. In Sparks v. Employers Mutual Liability Insurance Company of Wisconsin, La.App., 83 So.2d 453 (a workmen’s compensation case) it was stated in effect that photography may be a greater source of enlightenment than any number of printed pages of descriptive matter. To virtually the same effect see the general rule enunciated in 32 C. J.S. Verbo Evidence § 709, pages 611-612.
Finally, plaintiff advances the contention that the record is barren of evidence contradicting his testimony and that of Smith to the effect that plaintiff cannot work without substantial pain, therefore, it should be concluded he has proved his case. However, as previously shown, Smith did not testify that plaintiff could work only with pain but merely that he noted a decreased efficiency on plaintiff’s part following the accident. Regarding this same issue, plaintiff’s own testimony though admissible is undeniably subjective in nature and without medical corroboration except for the testimony of Dr. Campanella alone. Inconsistent therewith is plaintiff’s failure to seek treatment, his continued employment in the same line of work and his failure to produce even one witness to confirm his complaints of pain. Had plaintiff suffered pain to the extent indicated by his testimony we feel he most certainly would have sought medical assistance to gain relief therefrom.
We believe the case at bar the classic example for invocation of the principle that when issues of fact alone are involved the findings of the trial court are entitled to great weight and will not be disturbed or set aside unless manifestly erroneous.
Of the numerous authorities cited wherein an injured employee was awarded compensation benefits on the finding he could work only in substantial pain none are decisive of the case at bar insofar as a factual comparison or similarity is concerned. We have read the cited cases and are in agreement with the general principles of law therein set forth. It remains, however, that each case must be determined in the light of its own peculiar facts and circumstances. In each of the cited cases the court concluded the evidence as a whole warranted the conclusion the employee discharged the burden of proof incumbent upon him. In the case at bar after careful consideration of all the evidence, we cannot reasonably conclude plaintiff has been successful in this respect.
Judgment affirmed.